## A96A1514. McCORMICK v. THE STATE.
(476 SE2d 271)

BIRDSONG, Presiding Judge.

Jerry McCormick was indicted for rape, incest and sodomy involving his two daughters. He was tried by the trial court without a jury, and he did not testify or present any evidence on his own behalf. One daughter, M. M., was a special education student when these crimes occurred and was 19 at the time of trial. She testified she told her school counselor and a police detective that her father had "supposedly molested me" and had "supposedly" had intercourse and oral sex with her, but at trial she denied appellant had ever molested her. To the question: "Had you ever talked to [your sister] about what was going on?" she replied, "No. I talked to my grandmother mostly. . . . I told her everything that supposedly happened, but she never did believe it." She admitted that after appellant was arrested she came to the courthouse and talked to two women in the district attorney's office about dropping the charges against him. She also testified her mother wanted her to drop the charges: "[She] said why don't you just go in there and tell them it was a lie and I said okay. . . . [STATE'S ATTORNEY]: You remember [those two women] asked you if he had actually done the things to you that you told [the detective] about, you remember? [M. M.]: Uh-huh. Q: And you told them that he had done those things but you just wanted it over with. . . . [M. M.]: Yes, sir. . . . Q: You remember telling them . . . that this really had happened but you just wanted to drop it because of what your mother wanted? [M. M.]: Yes, sir. I've been taught by my mother and my

father [and] I do mind them." On cross-examination, this victim admitted telling defense counsel about similar allegations against her father, but said, "I told you it was a lie, that my mother just wanted my father in jail because she didn't love him anymore [because] she loved somebody else." She testified that she decided on her own to go to defense counsel's office and sign an affidavit stating that these criminal acts never happened. This affidavit was introduced in evidence.

M. M.'s 17-year-old sister, L. M., testified that despite her reports to school officials, her father never committed any sexual acts against her. She testified that her mother coerced her into making these false accusations by telling her she would not have a place to live "if I did not say these accusations." However, she then testified without equivocation that while she was in the kitchen cooking appellant's supper late one night, he forced her to perform oral sodomy; after she took his supper plate to him in the living room, he pulled her to the floor and attempted sexual intercourse, which she escaped by saying she had to go to the bathroom; and her grandmother then heard her crying, and "she called my name and told me to come do something for her. . . . I felt mad and angry." She testified her father told her something bad would happen if she told anybody and she would not have a dad, and she testified she loved her father. On cross-examination by defense counsel, however, she agreed that her accusations had caused serious problems for many people, that she regretted having made them and that she had voluntarily signed an affidavit saying her father never abused her sexually.

While testifying vaguely about the facts, the victims' mother admitted unequivocally that her daughters had told her appellant "did do it."

On appeal, appellant contends he was wrongly denied a new trial because nothing in the record or transcript shows he waived his right to a jury trial and his right to testify at trial as required by *Reid v. State*, 235 Ga. 378 (219 SE2d 740). The State contends a waiver of jury trial may be shown by "extrinsic evidence" such as appellant's trial counsel's testimony and letters introduced at the motion for new trial hearing. *Held*:

1. The burden to prove a voluntary waiver of jury trial rests squarely on the State. See, e.g., *Jones v. State*, 212 Ga. App. 676 (442 SE2d 908). To prove trial counsel discussed the waiver of a jury trial with appellant and that appellant voluntarily waived jury trial, three letters were introduced at the hearing on the motion for new trial. On September 15, 1993, defense counsel wrote to the district attorney that "perhaps [this matter] can be disposed of by way of a bench trial." Six days later, counsel wrote appellant in jail that "[the district attorney] refuses to dismiss the actions against you, but *will allow* a

bench trial." (Emphasis supplied.) In a third letter to the district attorney, counsel wrote: "This will confirm our telephone conversation of October 18, 1993 that a bench trial will be held." A copy of each letter by defense counsel to the district attorney was sent to appellant in jail.

These letters fall far short of showing appellant understood and voluntarily waived his right to a jury trial. At most, they show trial counsel alerted appellant that a "bench" trial would be *allowed.* The use of this word "allowed" would reasonably indicate to appellant that it is the district attorney's right to decide what sort of trial "will *be allowed*" and that with a "bench" trial appellant was being "allowed" advantageous privileges. There is no indication that appellant, who is not a lawyer and who the record shows was probably fairly unschooled, understood that a "bench" trial is not a "jury" trial. We note that many laypersons think a criminal "trial" naturally includes a jury, and laypersons may not understand that a "bench" trial does not include a jury. Some new lawyers do not know the difference, and experienced lawyers sometimes use the word "trial" to indicate that a "jury" was involved, as opposed to a hearing before a judge sitting alone.

In addition to these letters there is only trial counsel's testimony which, according to the State, proves appellant waived his right to jury trial. That testimony is very uncertain. Referring to trial counsel's letter to the district attorney on September 15, 1993, suggesting a bench trial, trial counsel was asked by the district attorney: "Had you discussed the subject of a bench trial with him at that point or was that something you talked [about] with him after the letter was sent?" Trial counsel replied that he did not "specifically recall. I would imagine I had been to the jail, I had interviewed his wife and children. I imagine before I would have issued such a letter that we would have discussed that that might be a reasonable resolution of this matter." The district attorney then asked: "Before you actually got to the point of sending [the October 18, 1993 letter to the district attorney confirming that a bench trial would be held in December] do you remember having some conversations with [appellant] about the subject of what was going to happen with his case and when it was going to be disposed of? A: I don't specifically recall, that was some time ago. I imagine that I would have to discuss with [appellant] the importance and my decision and recommendation to the bench trial as opposed to a jury trial. Q: Okay. You don't remember a specific conversation but you believe you did it? A: I cannot recall that, no, sir. Q: Well, do you recall having discussed the subject with him? A: I do recall discussing it. Q: Okay. You recall discussing the subject of a bench trial versus jury trial with him? A: Yes, sir. And why I felt a bench trial might be best under the circumstances of this case. Q:

And was there ever any question that [appellant] understood the difference between one or the other? A: I don't recall any such. Q: Any difficulty? A: No." To more leading questions by the district attorney whether trial counsel recalled a conversation wherein he and appellant reached a conclusion about how to handle the case and whether he recalled a conversation where a "specific decision" was made to "go this route" and whether he coerced or pressured appellant in any way to get him to decide to "go this way," trial counsel finally responded that he did recall having such conversations and did not pressure appellant.

We conclude the transcript of the motion for new trial hearing does not disclose that trial counsel could recall discussing with appellant the fact that appellant had a *right* to be tried by a *jury*, and that appellant knowingly and voluntarily waived that right. At best the attorney recalled discussing the difference between a jury trial and a bench trial and his own recommendation of a bench trial, and he recalled a conversation where they "reached some conclusion about how you were going to handle this . . . [and] where a specific decision to go this route was made."

There being no clear and affirmative evidence as there was in *White v. State*, 197 Ga. App. 162 (398 SE2d 35) that trial counsel even discussed with appellant his *right* to a jury trial, it does not signify that appellant did not testify at this hearing on his motion for new trial, since it is the State's burden first to show a prima facie waiver of jury trial. See *Reid*, supra. The cases cited by the State to the effect that a knowing and voluntary waiver of jury trial may be shown by "extrinsic evidence" (see *Evans v. State*, 216 Ga. App. 21, 24 (3) (453 SE2d 100) and *Cooper v. State*, 189 Ga. App. 286 (375 SE2d 505)) are inapplicable here, as there is no such "extrinsic evidence" in this case. The discussions testified to by the attorney in *Sims v. State*, 167 Ga. App. 479 (306 SE2d 732) are not remotely similar to the conversations the attorney in this case testified he recalled, for the only conversations this attorney recalled were that a "conclusion" was reached how to handle the case and a "specific decision to go this route was made."

For this reason, the trial court erred in denying appellant's motion for new trial.

2. We therefore find it unnecessary to determine the merit of appellant's second enumeration of error, to wit, that he was entitled to new trial because he was not advised of his right to testify. We note, however, that trial counsel did not recall specifically telling appellant he could or could not testify.

*Judgment reversed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 13, 1996.

*Margot S. Roberts*, for appellant.
*Ralph L. Van Pelt, Jr., District Attorney*, for appellee.